UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE/OPELOUSAS DIVISION

| | |
|---|---|
| **BRUSHETTE C. ALEXANDER** | **CIVIL ACTION NO. 09-1702** |
| **VERSUS** | **JUDGE DOHERTY** |
| **MICHAEL ASTRUE,** **COMMISSIONER OF SOCIAL SECURITY** | **MAGISTRATE JUDGE HANNA** |

*REPORT AND RECOMMENDATION*

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED**.

*Commissioner's Findings*

Brushette Christine Alexander filed applications for Title II disability and Title XVI supplemental security income benefits on January 24, 2007, alleging disability beginning December 19, 2005. (R 93, 101). In her application, Alexander alleged she was unable to work due to HIV, swollen legs, varicose veins in legs, high blood pressure and gastroparesis. (R 125).

Alexander was born on April 24, 1973, and was 35 years old on the date of the hearing before the ALJ on December 2, 2008. (R 22). Alexander testified at the hearing, as did vocational expert Shirley Dickie. (R 17). She testified she completed high school and one year of college, and became a Certified Nursing Assistant. (R 22).

In his Decision, the ALJ found Alexander had not engaged in substantial gainful activity since the alleged onset date of December 19, 2005.  (R 10).  At the second step, the ALJ found Alexander had the following severe impairments: Hypertension; Diabetes Mellitus; Human Immunodeficiency Virus (HIV); Anemia; and Headaches.  (R 11).  The ALJ found at the third step Alexander did not have any impairment or combination of impairments that met or equaled in severity any listed impairment.  (R 12).  The ALJ found Alexander had the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can only occasionally climb ramps/stairs, balance, kneel, crouch, and crawl.  She cannot climb ropes, ladders or scaffolds.  She must avoid exposure to unprotected heights and moving machinery.  (R 12).

Proceeding to the fourth step, the ALJ found Alexander could not perform her past relevant work as a Certified Nurse Assistant and Mental Retardation Aide.  (R 14).  At the fifth step, after hearing testimony from a vocational expert, the ALJ found Alexander could perform such representative jobs as assembler, telephone solicitor, and laborer (except construction).  (R 15).  As a result, the ALJ determined that Alexander had not been under any disability, as defined in the Social Security Act, from December 19, 2005, through the date of the Decision on March 26, 2009.  (R 16).  This appeal followed.

### *Assignment of Errors*

A complete reading of claimant's brief shows she alleges the following errors:

I.  The ALJ used a legally erroneous severity standard at step two and failed to

find her neuropathy and depression were severe impairments;

    II. The ALJ erroneously discounted the opinion of a nurse practitioner;

    III. The ALJ failed to consider the combined effects of her impairments;

    IV. The ALJ's residual functional capacity finding was not supported by substantial evidence of record.

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

Under the first four steps of the sequential analysis,[1] the burden lies with the claimant to prove disability. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995). The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. Id. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir.1987). The burden of proof then returns to the claimant to rebut the Commissioner's showing. Masterson v. Barnhart, 309 F.3d 267,

---

[1] In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

272 (5th Cir.2002). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

### *Review of Record and Discussion*

*Second Step Errors*

The ALJ specifically considered Alexander's alleged impairments of anxiety and depression, but found these mental impairments not severe at the second step.  The ALJ did not address neuropathy[2] as an impairment, although her HIV and diabetes were found severe at the second step.   Therefore, neuropathy as a medically determinable impairment was not addressed at the second step at all.

In the Decision, the ALJ recited the correct severity standard under Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985)("[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.").  However, the ALJ may have applied an incorrect severity standard to Alexander's alleged impairments of depression and anxiety: "claimant's medically determinable mental impairment of depression and anxiety *does*

---

[2]Peripheral neuropathy is a problem with the nerves that carry information to and from the brain and spinal cord to the rest of the body. This can produce pain, loss of sensation, and an inability to control muscles.  See http://www.nlm.nih.gov/medlineplus/ency/article/000593.htm (December 30, 2010).

*not cause more than minimal limitation* in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (R 11)(Emphasis added).

Even if the ALJ erred in applying an incorrect severity standard to Alexander's recognized mental impairments, the undersigned finds the error harmless as the disability analysis proceeded beyond the second step, which was the concern in Stone and related cases. "A case will not be remanded simply because the ALJ did not use 'magic words.' We remand only where there is no indication the ALJ applied the correct standard." See Hampton v. Bowen, 785 F.2d 1308, 1311 (5th Cir.1986). Moreover, the undersigned finds substantial evidence supports the Commissioner's finding that Alexander's depression and anxiety were not severe, even under the Stone standard, for the reasons given by the ALJ in the Decision.

More troublesome is the failure of the ALJ to recognize Alexander's neuropathy as a medically determinable impairment separate from her diabetes or HIV positive status. Instead, neuropathy is not mentioned in the Decision until the assessment of Alexander's residual functional capacity, where the ALJ completely discounted all of her allegations of functional limitations and pain arising from neuropathy. In fact, in assessing Alexander's physical residual capacity, the ALJ discredited even the existence of neuropathy, adopting an examining DDS physician's opinion that there was no objective evidence of same. In doing so, the ALJ in effect found Alexander's alleged neuropathy either not a medically determinable impairment at all, or at least not severe at the second

step.  Substantial evidence of record does not support either finding.

In her application, Alexander alleged that her impairments limited her ability to work as follows:

> I can't stand up for long periods of time my legs, hands, feets swell.  I/m in constant pain.  I/m tired a lot.  I have numbness in both hands.  I/m on so much medication that i can't function. (R 126).

She also wrote the following on her Function Report - Adult:

> Because of the neuropothy [sic] I can't stand, walk, squat, bend, or lift and even use my hands because of the pain with HIV.  I forget a lot of things completing tasks I am tired all the time. (R 150).

At the hearing before the ALJ, Alexander described the neuropathy in her legs as follows:

> [M]y legs were stiff, my feet were stiff, and they're doing this shooting, radiating pain, this burning sensation, and I'm catching little spasms, even as we speak. . . I deal with swelling in my feet. . . and in my legs. . .I can actually fell [feel] that it's swollen, but I can also see it.  (R 26 - 28).

She testified she also suffered with neuropathy in her hands that caused her hands to shake and interfered with her fine and gross motor dexterity about three or four times a week. (R 34).

A medical chart from University Medical Center (UMC) on January 11, 2006, noted that Alexander walked without an antalgic gait, but was tender to palpation of her bilateral lower extremities.  (R 179).  The same chart gave her a history and diagnosis of HIV Neuropathy, and instructed her to continue Neurontin, continue Elavil and Darvocet, and scheduled an appointment at the Neurology Clinic.  (R 180).  A similar finding was

made on an earlier chart, dated September 26, 2005.  (R 195).  On October 30, 2006, a UMC medical chart noted leg pain and paresthesia.  (R 206).  On December 15, 2006, she was seen at UMC's Neurology Clinic where she was diagnosed with HIV Neuropathy and prescribed Lyrica and Ultram.  (R 203, 204).  On May 10, 2006, a diagnosis of AIDS peripheral neuropathy was given.  (R234).  A chart note on June 6, 2006 reflected Alexander "presents [with] 'toe pain' that is 'burning and stabbing,' does not resolve [at] any time."  (R 224). The chart noted a physical exam showed the toes were without erythma or swelling, and were "tender consistent [with] prior peripheral neuropathy diagnosis." (R 224).   An undated chart note recorded increased sensitivity to her feet and a diagnosis of HIV polyneuropathy.  She was prescribed Lyrica.  (R 231, 232).  A January 22, 2007 medical chart from UMC noted diagnoses of HIV+, Neuropathy, and DM (diabetes mellitus).  (R 174).

     On March 19, 2007, an examination by Dr. Hudson Segrest, of Med-Plus LA was performed at the request of DDS.  During the exam, Dr. Segrest noted Alexander had "5/5 strength in her lower extremities" and that "[h]er sensory examination is normal to monofilament in bilateral lower extremities but she does complain of severe pain during monofilament testing."  (R 266).  He concluded as follows regarding her alleged neuropathy:

> 3.    Neuropathy.  I can find no objective findings to this and she has normal sensation, but she is just complaining of severe pain.  The exam does not show any decrease in sensation related to her neuropathy. (R 266).

Dr. Segrest concluded that "[d]uring my exam, I cannot find objective evidence for functional limitation at this time." (R 266).

In the Decision, the ALJ recited Dr. Segrest's opinion as "neuropathy, but he could not find any objective evidence to this and she had normal sensation." (R 13). The ALJ stated he was "giving great weight to this [Dr. Segrest's] opinion." (R 14).

As an initial matter, there is no indication that Dr. Segrest had any of Alexander's medical records showing years of medical treatment by multiple physicians, including a neurologist, for either HIV or diabetic neuropathy – in his report the section labeled "Past Medical History" is blank. (R 263). Moreover, the ALJ only partially recited Dr. Segrest's findings and did not include in the Decision Dr. Segrest's report that Alexander complained of severe pain upon monofilament testing. The ALJ only repeated and focused Dr. Segrest's finding that Alexander had "normal sensation." (R 13, 266).

In a disability analysis, the Commissioner must consider all potential impairments. See generally 20 C.F.R. § 404.1523; Loza v. Apfel, 219 F.3d 378, 393 (5th Cir.2000); Crowley v. Apfel, 197 F.3d 194, 197 (5th Cir.1999). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C.A. § 423(d)(3). Therefore, at the early stage of the sequential analysis, the ALJ must decide whether an alleged impairment is an impairment at all within the specialized meaning of that term. If not, there is no error in failing

9

thereafter to mention or analyze it further. Domingue v. Barnhart, 388 F.3d 462, 463 (5th Cir.2004).

The undersigned finds the ALJ committed legal error when he failed to consider in the first steps of the analysis whether Alexander's alleged neuropathy, whether diabetic or HIV related, was a medically determinable impairment and whether it was severe.  The ALJ did not address Alexander's alleged neuropathy as an individualized medically determinable impairment, apparently including it under HIV or diabetes.  However, including neuropathy under the umbrella of HIV or diabetes is akin to including a herniated disc with nerve root impingement under a generic term like "lower back problems."  Neuropathy is a impairment with typical functional limitations all its own, functional limitations not always included in diabetes or HIV.  Even if the failure to identify neuropathy as a separate medically determinable impairment and determine its severity at the second step was harmless error, (which the undersigned does not find to be the case) and Alexander's allegations of neuropathy were actually considered separately in assessing her residual functional capacity, they were considered under erroneous standards therefore warranting remand.

### *Assessment of Credibility and Residual Functional Capacity*

In assessing Alexander's residual functional capacity, the ALJ found Alexander's complaints of pain and functional limitation as a result of neuropathy were incredible – in fact, he found she did not even suffer with neuropathy and therefore it caused her no pain

or functional limitation. In making this determination, the ALJ adopted wholesale Disability Determination Services (DDS) examining physician Dr. Segrest's opinions that there were "no objective findings" of neuropathy and no "objective evidence" to support Alexander's complaints of pain and functional limitation. However, these opinions by Dr. Segrest were rendered without benefit of review of any of Alexander's medical records and upon Dr. Segrest's observations that Alexander walked faster outside of his office than inside and opened her car door with her right hand, which she refused to allow Dr. Segrest to test because of alleged pain. (R 13, 266).

The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). Further, the ALJ is entitled to determine the credibility of the examining physicians and medical experts and to weigh their opinions accordingly. Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994). However, an ALJ cannot reject a medical opinion without an explanation. Loza v. Apfel, 219 F.3d 378, 395 (5th Cir.2000), citing Strickland v. Harris, 615 F.2d 1103, 1110 (5th Cir.1980); Goodley v. Harris, 608 F.2d 234, 236 (5th Cir.1979). A credibility choice that is based on an erroneous interpretation of medical records cannot stand. See Olson v. Schweiker, 663 F.2d 593, 596 (5th Cir. 1981). Moreover, "[t]he ALJ must consider all the record evidence and cannot "pick and choose" only the evidence that supports his position. Loza v. Apfel, 219 F.3d 378, 393 (5th Cir. 2000).

Whether substantial evidence exists to support the ALJ's credibility determination is based on consideration of the following factors: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain; and (4) claimant's educational background, age and work history. Owens v. Heckler 770 F.2d 1276, 1279 (5th Cir. 1985). If the claimant establishes a medically determinable impairment capable of producing disabling pain, subjective complaints must be considered along with medical evidence in determining work capacity. Ripley v. Chater, 67 F.3d 552 (5th Cir 1995); 20 C.F.R. 404.1529, 20 C.F.R. 416.929.

In adopting Dr. Segrest's opinions that there were no objective findings of neuropathy or functional limitation or pain therefrom, the ALJ failed to consider the record evidence of multiple diagnoses of neuropathy by Alexander's treating physicians at UMC, including a neurologist, and prescriptions of multiple medications for same including Neurontin, Lyrica, and various pain medications. The ALJ is not allowed to "pick and choose" only the medical records that support his position and ignore the rest without explanation. In this case, the ALJ ignored multiple diagnoses and medications for management of neuropathy, and instead relied on a single medical opinion that was itself issued without the benefit of reviewing any other medical records.

In addition, the undersigned finds the ALJ failed to consider the effects of Alexander's multiple medications on her credibility and their side effects on her

12

functional capacity and ability to sustain gainful employment.  On June 22, 2007, Alexander was admitted to the hospital with diabetic gastroparesis for approximately one week.  A medication review form noted her medications as Reyataz, Truvada, Norvior, Enalapril, HCTZ, Norvasc, Lyrica, Darvolcate, ferrous sulfate, Elavil, Zyrtec and Avandamet.  (R 475).

At the hearing, Alexander complained about the side-effects of her medication:

> [M]y medication, I take so much medicine and it causes a lot of different side-effects, like dizziness, drowsiness, that it made it very impossible for me to work.  I mean, today, I haven't taken my medicine, so I could have been very coherent.  (R 23, 24).

Alexander specifically testified that the side-effects of her medication had an important impact on her functional abilities, testifying that her HIV medications caused the most serious side effects:

> . . . from my HIV meds, I have a lot of fatigue.  I'm always tired.  Some of them cause dizziness, and so I get light-headed easily. . . What is, it is that like I says, the dizziness, it's the fatigueness [sic], it's just always being so zonked. . . . that is the biggest thing for me, is the side-effects that I'm having with the medication, having to take the medication.  That's the biggest thing I'm concerned with and the pain of course.  (R 44, 45).

The ALJ's Decision does not reflect consideration of any of the medications she takes.  The only possible consideration of the side-effects of her medication is the single statement  "[t]o the extent the claimant contends she is unable to perform any work on a sustained basis, the evidence does not support such allegation."  (R 14).  It is impossible to tell from this statement whether the ALJ considered the side-effects of Alexander's

13

medications on her functional capacities or not, and it is clear the ALJ did not consider Alexander's prescriptions for Lyrica, Neurontin, and Darvocet in his credibility determination regarding the existence, pain, or limitations caused by her alleged neuropathy.

Social Security Ruling 96-7p and regulations at 20 CFR 404.1529(c) and 416.929(c) specifically state that in assessing a claimant's credibility, the ALJ must consider "the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" and "treatment, other than medication, the individual receives or has received for relief of pain or other symptoms."  An accurate factual representation regarding medication and other treatment a claimant receives or has received is essential in determining the credibility of claimant's allegations of pain or other symptoms.  Thus, the Fifth Circuit has held that a credibility choice based upon a misinterpretation of medical records requires reversal and remand. See Olson v. Schweiker, 663 F.2d 593, 596 (5th Cir. 1981).

For all of the reasons given above, the undersigned finds the ALJ's credibility determination was reached by application of erroneous legal standards and the ALJ's residual functional capacity determination is not supported by substantial evidence of record.  Therefore, the undersigned recommends that this matter be remanded to the Commissioner.

*Conclusion and Recommendation*

For the reasons given above,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **REVERSED AND REMANDED** for consideration of all of claimant's medically determinable impairments throughout the sequential evaluation, for reassessment of claimant's credibility, and for consideration of the side-effects of her multiple medications on her functional abilities, including her ability to perform work on a sustained basis.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon**

**grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Signed in Lafayette, Louisiana, this 6th day of January, 2011.

*[signature]*

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)